Next case is Beard v. Jeter and Energy Assortment Systems v. John Thomas Beard. You may proceed when you're ready, Mr. Patton. Good afternoon, Justices. John Patton, Jr. on behalf of John Thomas, Inc., which is identified as JTI in the papers. We are here today seeking a reversal of Judge Lopino's ruling that there is an agreement in place for JTI and Energy Assortment Systems, also known as EAS, that there is an agreement in place compelling arbitration of an identification clause. The overview here is we are contesting the fact that there is proper pleadings for there to be standing for EAS to assert rights under the distributorship agreement. And I will handle them or address them one at a time. The first issue that we're raising is that under the agreement, which is entitled, the Kehokee Transportation Safety, Inc. Distributorship Agreement entered into on July 1, 2009, the title of this agreement and the first paragraph of this agreement solely identifies who are the contracting parties to this agreement. EAS is not a contracting party to this agreement. You will find no language in this entire agreement that identifies EAS as a contracting party. And while it is a fairly voluminous contract by sophisticated parties, you will also, and I won't address every single paragraph, I'll hit the highlights. May I ask you a question before we get to that? Counsel for AFLI raises the jurisdiction argument. Would you respond to jurisdiction? Yes. This appeal is, the jurisdiction for this appeal is based upon Supreme Court Rule 307A1, which is an inlocutory appeal, and that is pursuant to Judge Lopino granting an injunction ordering us to arbitrate. And that order occurred on June 15, 2016, and our appeal was timely filed within the 30-day period. So we do have a jurisdiction to bring this matter before the justices. With respect to the contract, they're not a party. They have no standing. They plead in their counterclaim in a very conclusory manner that they are a party, but they can identify, and you will find nowhere in this agreement where EAS is actually the contracting party. As I stated, the parties are identified in the opening paragraph as Coyhote Transportation Safety, Inc. and as John Thomas, Inc. Throughout this contract, there is references to QTS, which is the abbreviation for Coyhote Transportation Safety, Inc. Furthermore, if you were to turn to the end of this agreement, that would be page 12, and this agreement is C3364 of the record, you again see the signatory page, which is crystal clear who are the contracting parties. In witness thereof, I quote, In witness thereof, the parties have executed this agreement as of the date first written above, signed Coyhote Transportation Safety, Inc. by James Crowley, Senior Vice President, and by John Thomas, Inc. by John Tabori, President. So the first issue that was raised by EAS seeking an arbitration is without merit. The second basis that EAS has claimed standing to enforce the arbitration clause of this agreement is that they are an assignee and they refer justices to the assignment clause in this agreement that requires, that sets forth certain parties that QTS, again, Coyhote Transportation, Inc., can assign its rights as paragraph 17, page 11 of 3374. And as you will see, Coyhote Transportation, Inc., here referred to as QTS, preserves the right to assign the rights and obligations hereunder to any subsidiary, affiliated business, or successor. Those are the three categories, subsidiary, affiliated business entity, or a successor. There is no merit in this agreement that EAS has identified, I should mention, that they are a subsidiary, an affiliated business, or a successor. No merit. Furthermore, and this is a very important point, when they filed their counterpoint for contribution and for unification, they alleged, they pledged that they were an assignee. And as the record now shows, that was false. They were not assigned any rights under this agreement at the time that they filed their counterclaim. And we cite case law that says your standing to claim rights as an assignee are when you file your plea. And then what we notice too, they did not have an assignment, though they claimed that they did. They produced an assignment a long time afterwards, and that assignment is, was dated in March of 2015. The record is C-4812, and I now turn your Justice's attention to this assignment, and it's dated 3-24-2016, obviously a long time after they pled that they had been assigned the rights. So now they come into the trial court after we contest the fact that there was a valid assignment, and they produce a new one, right? Now, because I don't have a whole lot of time here, I'm simply going to point out to the Justices, who signed it? Whose signature is it? There's no name. There's no title. We don't know who he is. Is he a maintenance engineer? Is he an officer? Who did this? Who signed this? This document has no foundation. It has no weight to be considered by the Justices because it's not an affidavit. It's not notarized. It's a hearsay piece of paper that doesn't need 2606 for 44 positions if you're an assignment under a contract to have a proper exhibit. And the document that you are holding up is found where in the record? C-4812. Thank you. And there just is a litany of flaws in this document. I mean, the basic one is we don't even know who this individual is, why he signed it, what capacity, no foundation. But then if you read each paragraph, there is a long trail of assertions by this unknown gentleman that is telling whoever is reading this that before EAS received this assignment on March 24, 2016, a whole lot of corporate activity took place. That Coyote Transportation Inc. sold its company and merged with another company. That company merged with another company. Assignments were occurring throughout and under 2606 you will see no assignments. Leading to the final conclusionary comment that EAS is an assignee under this agreement, completely flawed, and removed or striped it, and Judge Lopino somehow accepted this, and this is just not a proper document to establish their rights as an assignee. And so they have no standing as an assignee. Two more topics. We get to June 15, 2016, the very date that Judge Lopino issued for the first time a specific order that we have to arbitrate. So we have been fighting this for over a year. Fighting with motions that the arbitration should be stayed because they waived their rights to the arbitration. Fighting about the fact that they have no standing, nowhere in the contract, nowhere in this very late produced purported assignment. And lo and behold, as one of the last arguments that EAS's counsel makes, he says, oh, and if we're not a party, and if we're not an assignee, we're a third-party beneficiary of this agreement. The record has no pleadings, none, zero, claiming, in a counterclaim, that they are a third-party beneficiary to this contract. No notice, no motion, I'm going to ask for leave to amend my counterclaim for identification, I'm still a party, I'm still an assignee, and now I'm also a third-party beneficiary, does not exist in the record. A motion doesn't exist in the record, where you'll see the words, please consider us a third-party beneficiary. Is this during a motion hearing at June 15, 2016? That's right. Was this all on the record? It is, it is. And counsel mentions it twice, that he thinks that they're third-party beneficiaries, but you have no pleadings, you have no motion, nothing, just the words. So you're suggesting that this review is de novo? It is de novo. It's absolutely de novo. And the case law I cite, including the Illinois Supreme Court case, that dealt with third-party beneficiaries, if you're going to claim you aren't one, you've got to plead it. You have no pleadings. The last basis that we ask the justices to consider is that, and the case law is clear on this, with respect to arbitrations, if you're going to seek a court order requiring a party to arbitrate, you really need to elect that remedy as soon as you have the right to do so. So what happened in this case? When was the first time that my party, JTI, was demanded to arbitrate? Well, the record is clear. It was over a month, or about a month, after this case went to trial. So, and the history is in the record, Beard files his lawsuit, files it against some defendants, amends his complaint, eventually gets around to bringing in EAS, more time goes by, other parties decide to bring in my client, Mr. Cook, on behalf of Beard, finally gets around to bringing in him, and he went, I think, a fourth time to bring us in. And two months before trial, May 4th, 2015, was the trial date. Two months before that, for the first time, EAS files a counterclaim for contribution and for identification. And throughout that time period, they have participated in discovery, they had issued a discovery, a production request to my client, they had cross-examined Mr. DeBoer, the signatory to this agreement, all conduct that is clearly indicating they're not electing to seek arbitration under this contract. What their conduct is clearly showing is, in that counterclaim request to the jury, they are trying, they are clearly evidencing the intent to proceed to trial on the counterclaims for contribution and identification before a jury and not to arbitrate this matter under the AAA rules. Furthermore, we do get to trial. Trial starts May 4th, 2015. Case finally settled May 5th, a day into the trial. No motion to settle.  No demand for arbitration. None. And the case settles. The primary case settles. The cross-claims for contribution, apportioning fault among all the parties, those settle. Judge Lopenholt finds those counterclaims and the settlements all to be in good faith. Case is done. Thirty days later, request, demand, I should say, to arbitrate, and we cite all the cases all picked. A few justices in the Fifth District came out with a recent decision, a Midland decision. And it had a red quote in it. The procedural history of this case indicates that Midland was quite content to proceed with a judicial determination of the issues until it decided that it would be better off in arbitration. You could not find a fact pattern in this case that mirrors Midland. And so we ask that you consider your Midland funding ruling and determine for all of these reasons that the conduct of EAS clearly waived anyway, assuming you find standing, which, as I've argued, there is no standing, that they waived their rights. They were holding it back, waiting for everybody to settle, seeing how much money was going to be passed to the plaintiff. They paid, we paid, our pro rata share. Good faith finding. And then they come after us again with a demand to arbitrate. That's not fair. That's not how it should work. That's not this court's logic and rationale in finding waiver. And so, unless you have any questions, I would ask that you overturn Judge Wolfenau's injunction requiring my client to arbitrate in this matter. Remain it back down to him and have this matter dismissed with prejudice. Thank you, Counsel. We'll have an opportunity for you both. Counsel Flora Ackley. May I please report, Counsel? Michael Lester, appearing on the Alpha Energy Absorption Systems Inc. Sometimes I inadvertently slip into the vernacular and refer to my client as EAS. And so I don't mean to confuse the court. When I do that, I'll stop not to do so. But oftentimes when I'm speaking of John Thomasing, I sometimes slip into GJTI. And again, I apologize if that confuses the court. I'll attempt to avoid that if I can. While I was driving down to the courthouse from Belleville this morning, I was attempting to determine whether there was a pithy way of summarizing this case for the court, distilling it to its essence. And the one thing that came to mind is a quote that I read some time ago from Albert Einstein, wherein he defined the term insanity as doing the same thing over and over again and expecting a different result. Now, that's probably as close as I'll ever get to Albert Einstein. I'm going to paraphrase him for this court. And that is, the definition of futility in the context of litigation is doing the same thing over and over again and expecting a different result. And in the context of this particular case, when I refer to the phrase doing something over and over again, what transpired is that there were multiple pleadings filed by John Thomas, Inc. with respect to only one pleading that was filed on behalf of my client, Energy Absorption Systems, Inc. We made a demand under the distribution agreement that was referenced by counsel earlier this afternoon for arbitration with regard to the indemnification clause in that contract. Not the contribution claims that counsel previously addressed and suggested that there was a good faith finding and therefore there is some unfairness in pursuing an indemnification clause at this point in time. Not so. The only thing that was adjudicated at the time of the settlement were plaintiff's pending claims against the remaining defendants and the defendants' contribution claims against one another. The indemnification claim remained and was not dismissed nor exhausted. With regard to the multiple claims that were filed, with regard to that one pleading filed on behalf of EAS, they included motions for dismissal, motions to stay, motions to strike, motions to clarify, motions to reconsider. And nothing was done in one document that would allow the court to adjudicate this matter in a simple and direct and all-encompassing fashion. What happened is that John Thomas filed these pleadings seriatim. And so the very first motion that was filed with regard to the demand for arbitration was a motion to stay. But the contention, the only contention made at that point in time was that John Thomas believed that EAS waived its right to arbitration. The other issues that are presently before the court which I disagree with because of the jurisdictional issue, which I'll get to in a few minutes, but the other issues were raised at a later time. For example, whether my client was actually a party or assignee under the terms of the distribution agreement. And so, for whatever reason, John Thomas presented those motions to the court in that fashion and Judge Lopino handled those motions expertly and in a timely fashion and at the conclusion of the case in what I believe was probably April, but in reality, in terms of the quarters that were entered, June of last year, John Thomas, only at that moment in time, 30 days after, I think it was probably 30 days before he filed an arbitration appeal, but 30 days after the last orders were entered, filed the notice of appeal. And the significance of that delay and that seriative practice is that it deprived this court of jurisdiction. This court... The counsel suggested that notice of appeal was filed within 30 days of the order to arbitrate. Are you saying that's not true? Judge, what I'm saying is this, and if you'll please be patient with me, Rule 307 is the deal by which John Thomas purports to appeal this case to this court. This court, as everyone knows, is a court of limited jurisdiction. The best evidence of that is a review of Rule 307 itself and pertains to interlocutory appeals as of right. It's a very limited and defined category of subject matter which permits an interlocutory appeal under those circumstances. And the rule states, and I quote, the appeal must be perfected within 30 days from the entry of the interlocutory order by filing a notice of appeal. The rule also states, in subparagraph C, that there's an expedited schedule with regard to briefing because of the importance of these defined subject matters that are permitted to be appealed as of right. And the appellate courts have addressed this issue in terms of the statutory scheme or the Supreme Court rules dealing with interlocutory appeals. And the Crane case has been cited to this court. And in the Crane opinion, the court's state stated, and again I quote, preventing a party from pulling a 30-day rule by filing a motion to reconsider is important. The purpose of Rule 307A1 is to provide prompt review of an injunctive order so as not to prolong the harsh burdens of such an extraordinary remedy on those unjustly ordered to bear them. Those, quote, citing the landfill case. There's another reference to the Baird-Warner case by the appellate court in Crane. A motion to reconsider or for rehearing does not toll a 30-day deadline for filing a notice of appeal following an appealable interlocutory order. When this court, when Judge Lovino previously entered his order denying the motion to stay, that was an appealable interlocutory order under Rule 307A1 because it dealt with the granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction. And in the context of this case, arbitration. And so this court is deprived of jurisdiction because 301 doesn't permit general appeals on an interlocutory basis. It has a specific rubric that must be followed. The counsel's argument was that there was a motion of an order entered to arbitrate and that it's within 30 days of that order to arbitrate. Your Honor, this is the way I would approach that, that particular topic. As I indicated earlier, my client, on behalf of my client, I filed a demand for arbitration. John Thomas filed a motion to stay arbitration. That motion to stay was denied. Therefore, arbitration would have gone forward or should have gone forward at that point in time. The denial of the motion to stay was the same thing as ordering arbitration. And therefore, it was in the form of injunctive relief and as such was appealable under 307. Under the cases that I just cited to you, a party cannot hold an otherwise appealable order under Rule 307 by filing a motion for the hearing because Rule 307 doesn't permit that. Rule 307 doesn't address pulling up the 30-day time limit. It doesn't address motions for re-hearing. It doesn't address motions for reconsideration. It states specifically that the notice of appeal must be filed within 30 days and the injunctive nature of the court's earlier order when it denied the motion to stay was tantamount to ordering or permitting arbitration to proceed because that's what we've pled. We demanded arbitration and the court essentially said, arbitration granted. The motion to stay is denied. And so that triggered 307 and required an appeal at that point in time. And, Your Honor, the cases will replete with regard to that, especially, Your Honor, if you understand, and as I know the court does because we're dealing with this court's jurisdiction, not mine, but the purpose of 307 is specifically tailored to advance certain difficult topics or subject matters to the appellate court level. It's unusual. It's extraordinary. But it's permitted under 307. But those rules are defined, and the appellate courts that have examined this in terms of timing of events have said the timing is important and motions for rehearing do not hold the original 30-day time. And, Your Honor, that's why I believe that in this particular case, this court is deprived of jurisdiction, not because of anything this court did, not because of anything Judge Lovino did, but because of the actions of John Thomas in not promptly pursuing their appellate remedy. By the way, the appellate remedy was predicated on the motion that they filed in the court. So if they wanted to protect their rights, and obviously they did. They thought they had the right to file a motion to stay. I assume, Judge, that they had a more presentable argument to make justifying that motion. If they actually wanted to protect those rights, not only through the trial court, but the appellate court, they should have been vigilant and should have filed the notice of appeal within that 30-day time limit. Your Honor, there are two other cases, or Your Honors, there are two other cases that are mentioned prominently in our brief. The case that I want to bring to this Court's attention briefly is the Trophy Time case, which I believe is a Fourth District case. And I'm quoting this case to the Court because I could not say this better than Judge Mills did. Because he said, in his opinion, first line, we do not reach the merits. Second line, we cannot. Third line, no jurisdiction. Fourth line, here's why. A motion directed against an interlocutory auditor will not toll the running of the 30-day deadline for the filing of the notice of appeal. Close quote. And we've cited other cases that stand for that proposition. There is one case in the Fifth District issued by Judge Farnes, I think back in 1973, so it's some time ago, but Judge Farnes did attempts to deal with this issue in the context of the Clark case. But the issue that he's dealing with in the Clark case is not the issue that's present before the Court. In the Clark case, there apparently was a question, I don't know whether it was raised by the court's correspondent or by one or more of the parties because that's not presented in the opinion. But initially, he, being Judge Farnes, grappled with the issue of jurisdiction and first looked at whether he had jurisdiction because of Supreme Court Rule 303, decided he did not, then looked at Supreme Court Rule 308, again decided that he did not, but ultimately came to the conclusion that 307 provided a jurisdictional basis for his decision. However, that case doesn't provide any solace to John Thomas in this particular case because if you read the Clark opinion, which is a relatively short opinion, the Court was not dealing with the situation such as we are here, where someone was contending that a motion for re-hearing did or did not toll the initial 30-day time limit. That was not addressed in Clark, doesn't appear to have been raised, doesn't appear to have been briefed, and certainly was not decided in Clark. So that opinion doesn't provide any solace. So I think that, unless the Court has questions, addresses from our view the jurisdictional issue, which we believe is a very strong argument to make to the Court, such that if the Court agrees with us, there would not be any further need to evaluate the claims that remain. If, however, the Court disagrees with my client's position in that regard, I must touch upon the other two issues that were raised in the appeal by John Thomas. The first is standing, the other is waiver. With regard to the standing issue, I don't believe that it can be more clear in this case that EAS, my client, was a party to the distributorship agreement. The second paragraph in that agreement states as follows, whereas Quixote Transportation Safety and its affiliated companies, friends, here and after referred to collectively as Q2, QTS, those friends, manufacture of certain transportation safety products. So the question is, who are the affiliated companies? It's not difficult to ascertain that. You simply have to look at Exhibit A, which is attached to the contract, which is incorporated into the contract, is merged with the contract, becomes a terms and condition of the contract. Exhibit A identifies only one set of products that is the subject matter of this contract. And by the way, the products are Energy Absorption Systems, Inc. products. The territory involved with regard to sales of those products, Iowa, Kansas, and Nebraska, but they all pertain to Energy Absorption Systems, Inc. No other company is identified. Furthermore, if you look under the list of products, one of the products identified is a truck-mounted attenuator, which is referred to as a TMA. That is the product that was identified as the product in the beer case that Mr. Cook filed where he claimed that it was allegedly defective. And so we have the product identified in this contract. We also have at the bottom of the first page of Exhibit A terms dealing with shipping. More importantly, perhaps, on the next page of Exhibit A, we have a warranty. Energy Absorption Systems, Inc. makes that warranty. It could not be clearer that Energy Absorption, Inc. is a party to this contract. And I dare say, if for some reason there was a dispute between EAS, Einstein, and JPI about the fulfillment of these contractual terms, in other words, John House thought that there was a breach of this contract, I dare say that EAS would be identified as a defendant in that breach of contract litigation because it is obvious, faintly obvious, that EAS is a party to the contract. As a belt and suspenders approach, perhaps redundant, but we've also alleged in our counterclaim for identification that not only is EAS a party to the contract, EAS is an absentee with respect to the contract by virtue not only of the document that Mr. Patton shared with the court in his oral argument, but by implication because DOT identified its affiliated companies, which included EAS, and therefore that would constitute an assignment. And finally, Your Honors, we identified that a third-party beneficiary claim should be made despite what Mr. Patton stated to you. I believe that we've properly presented that claim to the court. We've cited in our brief the case of Tortiello, excuse me, not the brief, the case of Tortiello, and paraphrasing, I've got to come up with a decision, a third-party beneficiary is bound by the terms of the contract in the same manner as the parties are bound. The third-party beneficiary doctrine applies to arbitration agreements. And then finally, we're to show that the signatories to the agreement intend that non-signatories were to derive benefits from the agreement, which surely is the case here. EAS is selling products to John Thomas. John Thomas is paying EAS for those products. And where the agreement itself is susceptible to this interpretation, then arbitration is proper. So we believe that if you look at this case, there are at least three independent methods by which we establish that my client, EAS, is a party to the contract and has a need under the contract or is a third-party beneficiary and thus a proper party to bring the indemnification claim and seek arbitration under the distribution agreement. Final issues, waiver, and Justice Cates, your colleague, has given us a beacon to follow, and that is the Midland funding case, which I think is a couple months old, maybe not even that old. It is very enlightening in terms of trying to put some parameters on the issue of waiver and also provide some guidance with regard to the issue of waiver. But in the Midland case, the court recognized, first of all, the finding by Judge Colbert, who is a judge, as this Court knows, in St. Clair County at the 20th Judicial Circuit. But Judge Colbert determined that Midland waived its right to arbitrate due to its substantial participation in the litigation. And Judge Cates gave us kindness in citing that participation in her opinion. It took her five or six pages to do so with regard to... With regard to that, Judge Cates followed up her own opinion when she stated that with regard to the conduct of Midland, Midland's extensive participation in the litigation process, coupled with its delay in raising the existence of the agreement and the prejudice that befell the defendant in that case, indicated that arbitration was waived. None of those factors appear or pertain to our particular case. Thank you. Thank you, Counsel. Rebuttal. Good afternoon again, Justices. I recognize I have five minutes, and I will get to it. I have a lot of respect for EAS's counsel, but he is just flat-out wrong on this jurisdictional issue. Just flat-out wrong. I have the order, and it is part of the record here, the June 15, 2016, order of which we're seeking a neglectatory appeal, and it's C-4774. And you have the record, and you'll have all the orders entered, and I will submit to the Justices here that the first time you're ever going to see Judge Volkenau order my client arbitration is in the June 15, 2016, order, which reads as follows. The court finds that the distributorship agreement contains a mandatory arbitration provision that applies to the controversy and issues brought, I think it's by the parties. Therefore, the parties are ordered to arbitrate. First time in under 307A1, we know that an order to arbitrate under the Heider v. Mounce decision is proper jurisdiction to appeal, and there's no dispute. We filed it within 30 days of June 15. But I have to be honest. Another problem I'm having with counsel's position is that it took a different position with Judge Volkenau about our right to appeal at that same hearing. And I would cite the court to the record, S-31 and S-32, where Mr. Levinsky, seated next to me here today, states to the court, the court rules, all right, okay, I'm going to deny your motion to reconsider and the motion to dismiss. You're going to arbitration, Mr. Levinsky, and if we could have in the order then, Your Honor, that the parties are ordered to arbitrate so that we are permitted an interlocutory appeal by right. Judge Volkenau turns to Mr. Nestor and says, what do you have to say about that? Mr. Nestor responds at S-32, Your Honor, I believe under the case law, a decision denying or granting arbitration is considered in the form of adjunctive relief so that the provision of the Civil Practice Act of an appeal. Your Honor, I want to make sure the record is clear. If we're going up to the appellate court, one is this morning, I mentioned an interdict of your sister's motion for leaving to amend by interlocution. I ask that that be granted. The court, that will be granted. So the counsel, at least back then, was admitting the first time being ordered to arbitrate, and that is the grounds for appeal. He mentions all these other motions, and we do cite in our brief that under the Sarah Bush case, and under the Weiss case, which is the Illinois Supreme Court case, you justices are allowed to consider any motion, any order, any ruling that predicates or is intertwined with the order on appeal, and it is fair game under a 307 appeal. Weiss v. Waterhouse, the scope of review of the Bush case, Fort District case, the proper scope of review under Rule 307 is to review any prior error that bears directly upon a question of whether the order on appeal was proper. So the denial of the motion to stay, the standing issues, all by the Illinois Supreme Court and by appellate court law, is proper for all of you to consider, and none of that was contested at that June 15th hearing when we were asking Judge Lopanow, are you ordering us to arbitrate, so then we have our right to the appeal. With respect to, briefly, that counsel claims that they are a party, please review the assignment clause in the contract at paragraph 12. The Illinois Transportation Inc. assigns, makes it clear, it can assign this contract to its employers. And how is it that he can be a party, he can be assigning his rights to himself. It renders this contract meaningless and nonsensical. Thank you for your time. Thank you, counsel. This matter will be taken under advisement. Court will issue a decision in due course. Take a short recess.